# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| JAMES G. BAKER, *as Chapter 7 Trustee for the Bankruptcy Estate of Connie Kimberly George*, <br><br> Plaintiff, <br><br> v. <br><br> ASPEN SPECIALTY INSURANCE COMPANY, <br><br> Defendant. | Civil Action No. 1:26-CV-00163-JPB <br><br><br> **ANSWER AND AFFIRMATIVE <u>DEFENSES TO COMPLAINT</u>** |

Defendant Aspen Specialty Insurance Company ("Aspen" or "Defendant") hereby submits this Answer and Affirmative Defenses in response to the Complaint filed by Plaintiff James G. Baker, as Chapter 7 Trustee for the Bankruptcy Estate of Connie Kimberly George (the "Complaint").[1]

Aspen responds to the allegations in each individual numbered paragraph of the Complaint as follows below and denies each and every allegation of the Complaint, whether express or implied, that is not specifically, unequivocally, and expressly admitted herein.

---

[1] To the extent Aspen uses terms defined in the Complaint or headings utilized in that pleading in this Answer, such use is not an admission of any characterization Plaintiff may seek to associate with any such defined term or heading. The headings repeated from the Complaint are not treated as factual allegations.

**Preliminary Statement**

1. In this insurance coverage dispute, the insurer Aspen Specialty Insurance Company ("ASPEN") is liable for its failure to defend its insured, who defaulted and became subject to a judgment for over $24 million.

**ANSWER:** Aspen admits that this action is an insurance coverage dispute. The remaining allegations in Paragraph 1 are legal conclusions to which no response is required. To the extent a further response is required, Aspen denies that Plaintiff is entitled to any relief from Aspen.

2. Aspen is also liable for the $2 million coverage in the Policy as well as for its bad faith in both refusing to defend and in refusing to pay the judgment.

**ANSWER:** Aspen denies the allegations contained in Paragraph 2.

**Parties and Key People**

3. PLAINTIFF James G. Baker (the "TRUSTEE") is the appointed Chapter 7 Trustee for the bankruptcy estate of Connie Kimberly George in Case No. 24-20980, in the United States Bankruptcy Court for the Northern District of Georgia, Gainesville Division (the "BANKRUPTCY"). Mr. Baker is a citizen of Georgia, and he possesses all pertinent rights previously belonging to Ms. George.

**ANSWER:** Aspen admits the Plaintiff James G. Baker is the appointed Chapter 7 Trustee for the bankruptcy estate of Connie Kimberly George in Case No. 2420980, in the United States Bankruptcy Court for the Northern District of Georgia,

Gainesville Division. The remaining allegations in Paragraph 3 are legal conclusions to which no response is required. To the extent a further response is required, Aspen is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 3 and, on that basis, denies them.

4. DEFENDANT Aspen Specialty Insurance Company is a North Dakota company with its headquarters in Connecticut.

**ANSWER:** Aspen admits Aspen Specialty Insurance Company is a North Dakota domiciled insurer with a principal place of business in Jersey City, New Jersey. Aspen denies the remaining allegations contained in Paragraph 4.

5. The insured tortfeasor Ms. Connie Kimberly GEORGE is a former spa owner and insured under Aspen's Policy.

**ANSWER:** Aspen admits that Ms. Connie George was issued a Certificate of Liability Insurance, effective June 19, 2020 through June 19, 2021, pursuant to Aspen Policy Number LRAFVTX19A0M. Aspen is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 5 of the Complaint and, on that basis, denies them.

6. The injured claimant Ms. Blair Victoria ENAHORO was injured by Ms. George, sued Ms. George in a court of the state of Georgia, obtained a judg-

ment against Ms. George, initiated the Chapter 7 Bankruptcy proceedings against Ms. George, and is a judgment creditor of Ms. George's bankruptcy estate.

**ANSWER:** Aspen admits that Ms. Blair Victoria Enahoro alleges she was injured by Ms. George. Aspen admits that Ms. Enahoro sued Ms. George in the State Court of Dekalb County, Georgia. Aspen is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 6 of the Complaint and, on that basis, denies them.

### Jurisdiction and Venue

7. This Court has diversity subject-matter jurisdiction under 28 U.S.C. § 1332 over the claims because the Trustee and Aspen are citizens of different states and the amount in controversy exceeds $75,000, exclusive of interest and costs.

**ANSWER:** The allegations contained in Paragraph 7 of the Complaint are legal conclusions to which no response is required. To the extent a further response is required, Aspen does not contest jurisdiction.

8. The Court has personal jurisdiction over Aspen because Aspen consented to jurisdiction in this Court in accordance with the General Service of Suit Notice governing the relevant Policy. Aspen's counsel communicated Aspen's agreement not to challenge jurisdiction in this Court on January 8, 2026.

**ANSWER:** The allegations contained in the first sentence of Paragraph 8 of the Complaint are legal conclusions to which no response is required. To the extent

a further response is required, Aspen does not contest jurisdiction. As to the second sentence, Aspen admits that on January 8, 2026, its counsel communicated to Trustee's counsel its agreement not to challenge jurisdiction in this Court.

9. In the alternative, the Court has specific personal jurisdiction over Aspen consistent with Georgia's long arm statute, O.C.G.A. § 9-10-91(1), and Due Process because of Aspen's business contacts with the state of Georgia, including (but not limited to):

a. Aspen executed the binding insurance contract in Georgia by delivering the fully executed certificate to Ms. George at her Georgia address;

b. Upon information and belief, Aspen has executed numerous similar policies and certificates with other insureds in Georgia;

c. Aspen sent a reservation of rights letter to Ms. George at her Georgia address;

d. Aspen sent a denial of coverage letter—which the Trustee asserts as the basis for the breach—to Ms. George at her Georgia address; and

e. Upon information and belief, Aspen transacted other, similar business in Georgia.

**ANSWER:** The allegations contained in Paragraph 9 of the Complaint are legal conclusions to which no response is required. To the extent a further response is required, Aspen does not contest jurisdiction.

10. Venue is proper in the Northern District of Georgia under 28 U.S.C. § 1391(b)(2) because (1) the contract giving rise to the claim was finally executed in Fulton County, Georgia, which is within this district and division; (2) the personal injury suffered by the injured claimant Ms. Enahoro occurred in Dekalb County, Georgia, which is within this district and division; and (3) the damages suffered by Ms. George due to Aspen's breach occurred via a proceeding and judgment in Dekalb County, Georgia, which is within this district and division.

**ANSWER:** The allegations contained in Paragraph 10 of the Complaint are legal conclusions to which no response is required. To the extent a further response is required, Aspen does not contest venue. Aspen denies the Complaint's characterization of the facts in Paragraph 10 and the remainder of the allegations in Paragraph 10 of the Complaint.

**Factual Allegations**

**A. Ms. George's Spa and Services**

11. In November 2019, Ms. George started Perfect 10 Beauty & MedSpa LLC (the "SPA").

**ANSWER:** Aspen is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 11 of the Complaint and, on that basis, denies them.

12. In February 2020, Ms. George applied for an Occupational Tax Certificate with the City of Dunwoody. In her application, Ms. George described the "Dominant Business activity" at the Spa as "Non Invasive Cosmetic Procedures." She further stated that "At this time we are not offering massage services" and "should I decide to Offer Massage Services in the future any applicational application will need to be completed."

**ANSWER:** Aspen is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 12 of the Complaint and, on that basis, denies them.

13. Upon information and belief, the City of Dunwoody issued an operational tax certificate to the Spa.

**ANSWER:** Aspen is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 13 of the Complaint and, on that basis, denies them.

**B.    The Policy**

14. On June 19, 2020, Aspen issued a CERTIFICATE naming Connie George as insured No. 334410 under both the Commercial General Liability and the Professional Liability coverage parts of Aspen's POLICY No. LRAFVTX20A0M

issued to a risk purchasing group.[2] The Trustee attaches and incorporates both the Certificate (**Ex. A**) and the Policy (**Ex. B**) by reference into this Complaint.

**ANSWER:** Aspen admits that on June 19, 2020, Ms. George was issued a Certificate of Liability Insurance to Ms. Connie George (hereinafter referred to as "Certificate of Liability Insurance") pursuant to Aspen Policy No. LRAFVTX19A0M. The allegations in this Paragraph, in part, purport to restate and characterize the language of the Certificate of Liability Insurance and Aspen Policy No. LRAFVTX20A0M. The Certificate of Liability Insurance and Aspen's Policy No. LRAFVTX20A0M are written documents that speak for themselves, and Aspen denies any characterization or summary of the Certificate of Liability Insurance and Aspen Policy No. LRAFVTX20A0M or any allegations contained within Paragraph 14 of the Complaint that are inconsistent with the Certificate of Liability Insurance or POLICY No. LRAFVTX20A0M. Aspen admits that Exhibit A and Exhibit B are attached to the Complaint and are documents that speak for themselves. Aspen is without knowledge as to the accuracy of the Exhibits to Paragraph 14 of the

---

[2] The Policy year period ran from September 30 to September 30, but Ms. George's Certificate ran from June 19 to June 19. *See* Exs. A and B. Therefore, although the policy in effect at the time of Ms. George's certificate was the 2019 policy no. LRAFVTX19A0M, the Policy in effect at the time of the loss in October 2020 was the 2020 policy no. LRAFVTX20A0M. *See* Ex. B. Accordingly, that is the Policy to which the Trustee refers.

Complaint and, on that basis, denies them. Aspen denies the remaining allegations in Paragraph 14.

As to the footnote to Paragraph 14 of the Complaint, Plaintiff purports to characterize and summarize Aspen Policy No. LRAFVTX19A0M, Aspen Policy No. LRAFVTX20A0M, and Ms. George's Certificate of Liability Insurance. Those three documents are written documents that speak for themselves, and Aspen denies any characterization or summary of the documents or any allegations contained within Paragraph 14 of the Complaint that are inconsistent with the documents. Moreover, the footnote contains legal conclusions to which no response is required. To the extent a further response is required, Aspen denies the allegations in the footnote.

15. The Certificate and Policy were and are valid and enforceable contracts between Ms. George and Aspen.

**ANSWER:** The allegations contained in Paragraph 15 of the Complaint are legal conclusions to which no response is required. To the extent a further response is required, Aspen denies the allegations contained in Paragraph 15.

16. Under the Policy's Professional Liability coverage part, Aspen had the "duty to defend any claim or lawsuit... seeking compensatory damages against an insured which are payable under the terms of the Professional Liability coverage

part, even if any of the allegations of such claim or lawsuit are groundless, false or fraudulent." Ex. B, Policy, at ASIC0056 (emphasis omitted).

**ANSWER:** Aspen admits that Paragraph 16 of the Complaint contains partial, out-of-context quotes from the Professional Liability coverage part Section I.B of Aspen Policy No. LRAFVTX20A0M, to the extent that it accurately quotes the policy language, which is subject to Aspen Policy No. LRAFVTX20A0M's complete terms, definitions, conditions, exclusions, limitations, endorsements, and other clauses. Aspen Policy No. LRAFVTX20A0M is a written document that speaks for itself, and Aspen denies any characterization or summary of Aspen Policy No. LRAFVTX20A0M or any allegations contained within Paragraph 16 of the Complaint that are inconsistent with Aspen Policy No. LRAFVTX20A0M. Except as expressly admitted, Aspen denies all other allegations in Paragraph 16 of the Complaint.

17. Under the Policy's Commercial General Liability coverage part, Aspen also had the "duty to defend the insured against any suit seeking" "damages because of bodily injury... to which this insurance applies." *See id.* at ASIC00067.

**ANSWER:** Aspen admits that Paragraph 17 of the Complaint purports to quote partial, out-of-order, and out-of-context quotes from the Commercial General Liability coverage part, Section I.A.1.a, of Aspen Policy No. LRAFVTX20A0M, to the extent that it accurately quotes the policy language, which is subject to Aspen

Policy No. LRAFVTX20A0M's complete terms, definitions, conditions, exclusions, limitations, endorsements, and other clauses. Aspen Policy No. LRAFVTX20A0M is a written document that speaks for itself, and Aspen denies any characterization or summary of Aspen Policy No. LRAFVTX20A0M or any allegations contained within Paragraph 17 of the Complaint that are inconsistent with Aspen Policy No. LRAFVTX20A0M. Except as expressly admitted, Aspen denies all other allegations in Paragraph 17 of the Complaint.

18. Also under the Policy's Commercial General Liability coverage part, Aspen agreed to "pay those sums that the insured becomes legally obligated to pay as damages because of bodily injury or property damage to which this insurance applies." *See id.* (emphasis omitted) [sic]

**ANSWER:** Aspen admits that Paragraph 18 of the Complaint contains a partial quote from the Commercial General Liability coverage part, Section I.A.1.a, of Aspen Policy No. LRAFVTX20A0M, to the extent that it accurately quotes the policy language, which is subject to Aspen Policy No. LRAFVTX20A0M's complete terms, definitions, conditions, exclusions, limitations, endorsements, and other clauses. Aspen Policy No. LRAFVTX20A0M is a written document that speaks for itself, and Aspen denies any characterization or summary of Aspen Policy No. LRAFVTX20A0M or any allegations contained within Paragraph 18 of the Complaint that are inconsistent with Aspen Policy No. LRAFVTX20A0M. Except

as expressly admitted, Aspen denies all other allegations in Paragraph 18 of the Complaint.

**C.     Ms. Enahoro's Bodily Injuries**

19.     In October 2020, during the Policy period, Ms. Enahoro sought services at the Spa. Among other services, Ms. George put cream on Ms. Enahoro's stomach and provided red light therapy to Ms. Enahoro.

**ANSWER:** Paragraph 19 contains legal conclusions to which no response is required.  To the extent a further response is required, Aspen admits that Ms. Enahoro alleged in her Underlying Complaint that she sought services from the Perfect 10 Beauty & MedSpa, LLC in October 2020.  Aspen admits that Ms. Enahoro alleged in her Underlying Complaint that Ms. George put cream on Ms. Enahoro's stomach and placed a bright light close to her stomach.  Aspen avers that after multiple requests, Ms. George and Mr. Stoddard failed to and/or refused to provide any further information regarding those allegations.  The Trustee's counsel also refused to provide further information.  As to the remaining allegations of Paragraph 19, Aspen is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 19 and, on that basis, denies them.

20. Red light therapy involves the use of an infrared lamp. These lamps are commonly available to members of the public on websites such as Amazon. Ms. George purchased the infrared lamp used at the Spa from Amazon.

**ANSWER:** Aspen admits that Ms. Enahoro alleged in her Underlying Complaint that Ms. George put cream on Ms. Enahoro's stomach and placed a bright light close to her stomach. Aspen avers that after multiple requests, Ms. George and Mr. Stoddard failed and/or refused to provide any further information regarding those allegations. The Trustee's counsel also refused to provide further information. Aspen is without knowledge or information sufficient to form a belief as to the truth of the remainder of the allegations contained in Paragraph 20 of the Complaint and, on that basis, denies them.

21. As part of Ms. Enahoro's red light therapy, Ms. George placed the infrared lamp close to Ms. Enahoro's stomach and later above her back and left it for an extended period of time.

**ANSWER:** Aspen admits that Ms. Enahoro's Underlying Complaint alleged that Ms. George placed a bright light close to Ms. Enahoro's stomach and left the room for an extended period. Aspen further admits that Ms. Enahoro's Underlying Complaint alleged that Ms. George placed a bright light above Ms. Enahoro's back. Aspen avers that after multiple requests, Ms. George and Mr. Stoddard failed and/or refused to provide any further information regarding those allegations. The

13

Trustee's counsel also refused to provide further information. As to the remaining allegations of Paragraph 21, Aspen is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 21 of the Complaint and, on that basis, denies them.

22. Ms. George's services caused Ms. Enahoro to suffer severe burns requiring hospitalization and extensive burn treatment exceeding $300,000 in medical bills.

**ANSWER:** Aspen admits that Ms. Enahoro's Underlying Complaint alleged she was diagnosed with severe stomach burns, was hospitalized, received treatments, and incurred over $300,000 in medical bills. As to the remaining allegations of Paragraph 22, Aspen is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 22 of the Complaint and, on that basis, denies them.

**D.  Aspen's Denial of Defense and Coverage**

23. On April 21, 2021, Ms. Enahoro's counsel gave Aspen direct notice of her burn injuries and hospitalization, and of the potential claims against Ms. George.

**ANSWER:** The allegations of "direct notice" in Paragraph 23 are legal conclusions to which no response is required. To the extent a further response is required, Aspen denies that allegation. As to the remaining allegations in Paragraph 23, Aspen admits that on April 21, 2021, Mr. Matthew Stoddard sent an email to

14

Aspen. The April 21, 2021 email is a written document that speaks for itself, and Aspen denies any characterization or summary of the communication or any allegations contained within Paragraph 23 of the Complaint that are inconsistent with the email. Thus, Aspen denies the remaining allegations of Paragraph 23.

24. On June 9, 2021, Aspen sent to Ms. George a RESERVATION OF RIGHTS LETTER in which it acknowledged notice of the claims and lawsuit and reserved its rights as to her defense.

**ANSWER:** The allegations in Paragraph 24 are legal conclusions to which no response is required. To the extent a further response is required, Aspen admits that on June 9, 2021, it sent a letter to Ms. George regarding, among other things, Ms. George's duty of cooperation, Ms. George's failure to cooperate, and its reservation of rights. The June 9, 2021 letter is a written document that speaks for itself, and Aspen denies any characterization or summary of the letter or any allegations contained within Paragraph 24 of the Complaint that are inconsistent with the letter. Aspen denies the remaining allegations of Paragraph 24.

25. On June 14, 2021, Ms. Enahoro sued Ms. George and the Spa in the State Court of DeKalb County, Case No. 21A02840. The Trustee attaches and incorporates Ms. Enahoro's UNDERLYING COMPLAINT (**Ex. C**) into this Complaint.

**ANSWER:** Aspen admits that on June 14, 2021, Ms. Enahoro sued Ms. George and Perfect 10 Beauty & MedSpa LLC in the State Court of DeKalb County, State of Georgia, Case No. 21A02840. Aspen admits that Exhibit C is attached to the Complaint and is a document that speaks for itself. Aspen is without knowledge as to the accuracy of Exhibit C to the Complaint, and, on that basis, denies it. Aspen denies the remaining allegations of Paragraph 25.

26. Accordingly, Ms. George's Answer was due no earlier than July 14, 2021.

**ANSWER:** The allegations in Paragraph 26 are legal conclusions to which no response is required. To the extent a further response is required, Aspen is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 26 and, on that basis, denies them.

27. On July 2, 2021, before Ms. George's Answer was due, Aspen sent to Ms. George a DENIAL LETTER, stating it "decline[d] coverage for both a defense and indemnity" and "will not be taking any further action to defend or indemnify" Ms. George. *See* Ex. D at ASIC00046-47. The Trustee attaches and incorporates the Denial Letter (**Ex. D**) by reference into this Complaint.

**ANSWER:** Aspen admits that it sent Ms. George a letter on July 2, 2021. The allegations in this Paragraph, in part, purport to selectively quote the language of the July 2, 2021 letter. The July 2, 2021 letter is a written document that speaks

16

for itself, and Aspen denies any characterization or summary of the letter or any allegations contained within Paragraph 27 of the Complaint that are inconsistent with the letter. Aspen admits that Exhibit D is attached to the Complaint and is a document that speaks for itself. Aspen is without knowledge as to the accuracy of Exhibit D to Paragraph 27 of the Complaint and, on that basis, denies it. The remaining allegations in Paragraph 27 are legal conclusions to which no response is required. To the extent a further response is required, Aspen is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 27 and, on that basis, denies them.

28. In the Denial Letter, Aspen said that it had "analyzed coverage for this matter under" the POLICY and that it had "review[ed] the material provided and consider[ed] the availability of coverage." Ex. D, Denial Letter, at ASIC00047.

**ANSWER:** Aspen admits that it sent Ms. George a letter on July 2, 2021. The allegations in this Paragraph purport to selectively quote the language of the July 2, 2021 letter. The July 2, 2021 letter is a written document that speaks for itself, and Aspen denies any characterization or summary of the letter or any allegations contained within Paragraph 28 of the Complaint that are inconsistent with the letter.

29. However, in the Denial Letter, Aspen did not refer to any other materials related to the factual allegations other than the Complaint.

**ANSWER:** The allegations in this Paragraph purport to characterize the language of the July 2, 2021 letter. The July 2, 2021 letter is a written document that speaks for itself, and Aspen denies any characterization or summary of the letter or any allegations contained within Paragraph 29 of the Complaint that are inconsistent with the letter.

30. Upon information and belief, Aspen did not conduct any investigation into the facts alleged in the Complaint to determine if they were true.

**ANSWER:** The allegations in Paragraph 30 are legal conclusions to which no response is required. To the extent a further response is required, Aspen denies the allegations contained in Paragraph 30.

31. Instead, Aspen denied coverage and refused a defense based solely on the Complaint's allegations. For example, Aspen stated "The complaint alleges that you did not hold any professional license, including a massage therapy license, at the time you provided services to the claimant. Accordingly, *we are forced to conclude* that the services you allegedly provided were not 'within the scope of your certification and licensure.'" *Id.* at ASIC00049 (emphasis added).

**ANSWER:** The allegations in this Paragraph purport to selectively quote and characterize the language of the July 2, 2021 letter. The July 2, 2021 letter is a written document that speaks for itself, and Aspen denies any characterization or summary of the letter or any allegations contained within Paragraph 31 of the

Complaint that are inconsistent with the letter. Aspen denies the remaining allegations of Paragraph 31.

32. Aspen acknowledged that the Professional Liability coverage was "potentially applicable." *Id.* at ASIC00048.

**ANSWER:** The allegations in this Paragraph 32 purport to restate and characterize the language of the July 2, 2021 letter. The July 2, 2021 letter is a written document that speaks for itself, and Aspen denies any characterization or summary of the letter or any allegations contained within Paragraph 32 of the Complaint that are inconsistent with the letter.

33. But then, for Professional Liability coverage, Aspen "identified" six specific reasons why it would not provide coverage or a defense. *See id.* at ASIC00048-51.

**ANSWER:** The allegations in this Paragraph purport to restate and characterize the language of the July 2, 2021 letter. The July 2, 2021 letter is a written document that speaks for itself, and Aspen denies any characterization or summary of the letter or any allegations contained within Paragraph 33 of the Complaint that are inconsistent with the letter.

34. For Commercial General Liability coverage, Aspen listed two specific exclusions as the reasons that it would not provide coverage or a defense. *See id.* at ASIC00048 n.1. However, although Aspen summarily noted that "The Claim falls

squarely within these exclusions from coverage," it did not explain why or offer any further analysis about Commercial General Liability coverage. *Id.*

**ANSWER:** The allegations in this Paragraph purport to restate and characterize the language of the July 2, 2021 letter. The July 2, 2021 letter is a written document that speaks for itself, and Aspen denies any characterization or summary of the letter or any allegations contained within Paragraph 34 of the Complaint that are inconsistent with the letter.

**E.     Default Judgment against Ms. George**

35.     Without an insurance-provided defense, Ms. George was unable to properly defend herself in Ms. Enahoro's lawsuit.

**ANSWER:** Aspen is without knowledge or information sufficient to form a belief as to the truth of the allegation that Ms. George was unable to properly defend herself in Ms. Enahoro's lawsuit. Aspen denies the remaining allegations of Paragraph 35.

36.     Ms. George failed to respond to the lawsuit and defaulted.

**ANSWER:** Aspen is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 36 and, on that basis, denies them.

37.     In September 2021, Ms. George initially appeared at the location of her scheduled deposition but then left the site and failed to attend. Before leaving, she

told Ms. Enahoro's counsel that she believed she had an attorney named "Mr. Mohammed." But Mr. Mohammed had told Enahoro's counsel that he "[did] not represent Connie George on this pending matter." Ms. Enahoro expressed confusion and said she wasn't talking because Mr. Mohammed did represent her.

**ANSWER:** Aspen is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 37 and, on that basis, denies them.

38. Ms. George didn't appear for the second attempt to schedule her deposition.

**ANSWER:** Aspen is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 38 and, on that basis, denies them.

39. Ms. George didn't appear for a hearing.

**ANSWER:** Aspen is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 39 and, on that basis, denies them.

40. After a Court order, in June 2022, Ms. George appeared for her deposition. She acknowledged "missing the court dates and missing the times that I was supposed to be there," but stated that "I do have insurance and it's for them to correct the situation because that's the reason I have insurance."

**ANSWER:** Aspen is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 40 and, on that basis, denies them.

41.    Ms. George did not appear at the damages trial in April 2023.

**ANSWER:** Aspen is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 41 and, on that basis, denies them.

42.    At that trial, Ms. Enahoro was awarded compensatory damages of $17.5 million and expenses of litigation for $7 million.

**ANSWER:** Aspen is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 42 and, on that basis, denies them.  Moreover, the verdict form is a written document, containing handwriting, that speaks for itself, and Aspen denies any characterization or summary of the verdict form that is inconsistent with the verdict form.

43.    On April 18, 2023, the Dekalb County State Court entered a final JUDGMENT jointly and severally against Ms. George and the Spa for $24,500,000 in damages, plus post-judgment interest at 11% per annum, and for $242 in costs.

**ANSWER:** Aspen admits that the Dekalb County Court entered an order on April 18, 2023.  The order is a written document that speaks for itself, and Aspen

denies any characterization or summary of the order that is inconsistent with the order.

**F.     Ms. George's Bankruptcy and Appointment of Trustee**

44.     Unable to collect her judgment from Ms. George, in August 2024, Ms. Enahoro filed an involuntary bankruptcy petition and initiated the Chapter 7 Bankruptcy proceedings against Ms. George.

**ANSWER:**  Aspen admits that Ms. Enahoro filed an involuntary bankruptcy petition and initiated the Chapter 7 Bankruptcy proceedings against Ms. George. Aspen is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 44 and, on that basis, denies them.

45.     In May 2025, the Bankruptcy Court entered an Order for Relief under Chapter 7 of the Bankruptcy Code.

**ANSWER:**  The allegations in Paragraph 46 purport to characterize a written document, an Order for Relief in Involuntary Case, dated May 7, 2025, and that document is available on the U.S. Bankruptcy Court Northern District of Georgia, Docket No. 24-20980-jrs.  The Order is a written document that speaks for itself and Aspen refers the Court to that document for its specific terms.  To the extent a further response is required, Aspen denies any characterization or summary of the document

or any allegations contained within Paragraph 45 of the Complaint that are inconsistent with the document.

46. In June 2025, the Bankruptcy Court appointed the Trustee as trustee over Ms. George's bankruptcy estate.

**ANSWER:** The allegations in Paragraph 46 purport to characterize a written document, a Notice of Appointment, and that document is available on the U.S. Bankruptcy Court Northern District of Georgia, Docket No. 24-20980-jrs. The Notice is a written document that speaks for itself and Aspen refers the Court to that document for its specific terms. To the extent a further response is required, Aspen denies any characterization or summary of the document or any allegations contained within Paragraph 46 of the Complaint that are inconsistent with the document.

47. In September 2025, the Bankruptcy Court approved an application for the Trustee to employ Special Counsel to "represent the Trustee in matters relating to the attempted recovery of damages relating to an insurance policy issued in favor of the Debtor by Aspen Insurance Company."

**ANSWER:** The allegations in Paragraph 47 purport to selectively quote and characterize a written document, an Order Approving Trustee's Counsel, Subject to Objection (Hourly Fee) on September 16, 2025, and that Order is available on the U.S. Bankruptcy Court Northern District of Georgia, Docket No. 24-20980-jrs. The

Order is a written document that speaks for itself and Aspen denies the accuracy of Plaintiff's characterizations and out-of-context selective quotations thereof, and otherwise denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 47 of the Complaint.

48. On October 30, 2025, the Trustee sent Aspen a written demand letter constituting a formal demand under O.C.G.A. § 33-4-6 for payment of $24,500,000 plus post-judgment interest within sixty (60) days and also demanded immediate payment of the $2,000,000 policy limits and full judgment within thirty (30) days.

**ANSWER:** The allegations in Paragraph 48 are legal conclusions to which no response is required. To the extent a further response is required, Aspen admits that on October 30, 2025, counsel for the Trustee, Bondurant, sent Aspen a letter that purportedly contains a demand under O.C.G.A. § 33-4-6. Aspen denies that this October 30, 2025 letter satisfies the requirements of the statute. Aspen denies the remaining allegations of Paragraph 48.

49. More than sixty days have elapsed since the Trustee's statutory demand, and Aspen has not paid.

**ANSWER:** The allegations in Paragraph 49 are legal conclusions to which no response is required. To the extent a further response is required, Aspen admits that on October 30, 2025, counsel for the Trustee, Bondurant, sent Aspen a letter.

Aspen denies that the October 30, 2025 letter satisfies the requirements of O.C.G.A. § 33-4-6. Aspen denies the remaining allegations of Paragraph 49.

50.     On December 22, counsel for Aspen responded by letter to the Trustee's written demand. Ex. E, Demand Response. In sum, that letter requests additional information from which Aspen might reevaluate its coverage position but concludes that Aspen "lacks any information that would suggest it should revisit or revise its coverage determination." *Id.* at 2. No part of the letter indicates that Aspen will pay either the $2,000,000 policy limit or the $24,500,000 judgment plus post-judgment interest.

**ANSWER:**  The allegations in Paragraph 50 purport to characterize a letter that Aspen, through counsel, sent to the Trustee's counsel, Bondurant, on December 22, 2025.  The December 22, 2025 letter is a written document that speaks for itself, and Aspen denies any characterization or summary of the letter or any allegations contained within Paragraph 50 of the Complaint that are inconsistent with the letter. Moreover, Paragraph 50 contains legal conclusions as to which no response is required.  To the extent a further response is required to those allegations, Aspen denies that the October 30, 2025 letter satisfies the requirements of O.C.G.A. § 33-4-6.

51.     Importantly, however, the letter acknowledges that Aspen was on notice of the claim and that "Aspen treated the allegations [of the underlying complaint]

as true for purposes of its coverage decision" when it "issued its coverage decision on July 2, 2021." *Id.*

**ANSWER:** The allegations contained in Paragraph 51 contain legal conclusions to which no response is required. To the extent a further response is required, Aspen admits that the December 22, 2025 letter from Aspen to the Trustee is a written document that speaks for itself, and Aspen denies any characterization or summary of the letter or any allegations contained within Paragraph 51 of the Complaint that are inconsistent with the letter. Aspen denies the remaining allegations of Paragraph 51.

### Claims for Relief

### Count I: Breach of the Duty to Defend

52. The Trustee incorporates the factual allegations in paragraphs 1 to 51.

**ANSWER:** Aspen incorporates by reference its responses to Paragraphs 1 through 51 as if copied verbatim herein.

53. Under applicable Georgia law, Aspen breached its duty to defend arising under both (1) the Professional Liability coverage part and (2) the Commercial General Liability coverage part in the Policy.

**ANSWER:** The allegations contained in Paragraph 53 are legal conclusions to which no response is required. To the extent a further response is required, Aspen denies the allegations contained in Paragraph 53.

54.     Under applicable Georgia law, an insurer's duty to defend is broader than the duty to provide coverage, and Aspen was obliged to defend Ms. George if the facts as alleged in Ms. Enahoro's Underlying Complaint even arguably brought the occurrence within the policy's coverage and unless coverage was unambiguously excluded.

**ANSWER:** The allegations contained in Paragraph 54 of the Complaint are legal conclusions to which no response is required.  To the extent a further response is required, Aspen denies the allegations contained in Paragraph 54.

55.     Also, under the Professional Liability coverage part, Aspen had a duty to defend Ms. George in the lawsuit "even if any of the allegations of such claim or lawsuit are groundless, false or fraudulent." Ex. B, Policy, at ASIC00056 (emphasis omitted).

**ANSWER:** The allegations contained in this Paragraph are legal conclusions to which no response is required.  To the extent a further response is required, the allegations in this Paragraph, in part, purport to restate, out of context, the language of Aspen Policy No. LRAFVTX20A0M, which is subject to Aspen Policy No. LRAFVTX20A0M's complete terms, definitions, conditions, exclusions, limitations, endorsements, and other clauses.  Policy No. LRAFVTX20A0M is a written document that speaks for itself, and Aspen denies any characterization or

summary of or any allegations contained within Paragraph 55 of the Complaint that are inconsistent therein.

56. At the time of the Denial Letter, the allegations in the Underlying Complaint *arguably* brought her claims within the Professional Liability coverage, particularly given that the Underlying Complaint's allegations could have been later proven to be groundless or false.

**ANSWER:** The allegations contained in Paragraph 56 of the Complaint are legal conclusions to which no response is required. To the extent a further response is required, Aspen denies the allegations contained in Paragraph 56.

57. Indeed, Aspen admitted that the Professional Liability coverage was "potentially applicable." Ex. D, Denial Letter, at ASIC00048.

**ANSWER:** The allegations contained in Paragraph 57 purport to characterize the July 2, 2021 letter. The July 2, 2021 letter is a written document that speaks for itself, and Aspen denies any characterization or summary of the letter or any allegations contained within Paragraph 57 of the Complaint that are inconsistent with the letter.

58. In the Denial Letter, Aspen cited six reasons why it was denying coverage and refusing a defense under the Professional Liability part.

**ANSWER:** The allegations contained in Paragraph 58 purport to characterize the July 2, 2021 letter. The July 2, 2021 letter is a written document that speaks for

29

itself, and Aspen denies any characterization or summary of the letter or any allegations contained within Paragraph 58 of the Complaint that are inconsistent with the letter.

59. Each reason is subject to argument or ambiguity—particularly given that the Underlying Complaint's allegations could have later been proven to be groundless or false—which is all that is required to establish the duty to defend.

**ANSWER:** The allegations contained in Paragraph 59 of the Complaint are legal conclusions to which no response is required. To the extent a further response is required, Aspen denies the allegations contained in Paragraph 59.

60. Accordingly, Aspen was obliged to defend Ms. George under the Professional Liability coverage part.

**ANSWER:** The allegations contained in Paragraph 60 of the Complaint are legal conclusions to which no response is required. To the extent a further response is required, Aspen denies the allegations contained in Paragraph 60.

61. The allegations in Ms. Enahoro's complaint also *arguably* brought her claims within the Commercial General Liability coverage part.

**ANSWER:** The allegations contained in Paragraph 61 of the Complaint are legal conclusions to which no response is required. To the extent a further response is required, Aspen denies the allegations contained in Paragraph 61.

62. In the Denial Letter, Aspen cited two reasons why it was denying coverage and refusing a defense under the Commercial General Liability coverage part.

**ANSWER:** The allegations contained in Paragraph 62 purport to characterize the July 2, 2021 letter. The July 2, 2021 letter is a written document that speaks for itself, and Aspen denies any characterization or summary of the letter or any allegations contained within Paragraph 62 of the Complaint that are inconsistent with the letter.

63. But each reason is subject to ambiguity or argument, which is all that is required to establish the duty to defend.

**ANSWER:** The allegations contained in Paragraph 63 of the Complaint are legal conclusions to which no response is required. To the extent a further response is required, Aspen denies the allegations contained in Paragraph 63.

64. In the Denial Letter, Aspen first contended that the claims excluded by the professional services exclusion, which excluded claims "arising out of the rendering of or failure to render professional services, or that is covered under the Professional Liability Coverage Part of this policy or any other services performed for others that require specialized knowledge, labor; or skill and licensure by a governmental entity." *Id.* at ASIC00048 n.1

**ANSWER:** The allegations contained in Paragraph 64 purport to characterize the July 2, 2021 letter. The July 2, 2021 letter is a written document that speaks for

itself, and Aspen denies any characterization or summary of the letter or any allegations contained within Paragraph 64 of the Complaint that are inconsistent with the letter.

65. But Aspen elsewhere concluded that the service was *not* covered by the Professional Liability Coverage. And it was ambiguous from the Complaint whether the services provided required specialized knowledge or a license, meaning that the contract does not unambiguously exclude coverage.

**ANSWER:** The allegations contained in the first sentence of Paragraph 65 purport to characterize the July 2, 2021 letter. The July 2, 2021 letter is a written document that speaks for itself, and Aspen denies any characterization or summary of the letter or any allegations contained within Paragraph 65 of the Complaint that are inconsistent with the letter. The allegations contained in the second sentence of Paragraph 65 of the Complaint are legal conclusions to which no response is required. To the extent a further response is required, Aspen denies the allegations contained in the second sentence of Paragraph 65.

66. In the Denial Letter, Aspen next contended that the allegations were excluded by the exclusion that excludes "any loss, cost or expense covered under a directors and officers, errors and omissions, employers' practices liability, workers' compensation, automobile, or fire insurance policy, or insurable under such a policy." *Id.*

**ANSWER:** The allegations contained in Paragraph 66 purport to characterize the July 2, 2021 letter. The July 2, 2021 letter is a written document that speaks for itself, and Aspen denies any characterization or summary of the letter or any allegations contained within Paragraph 66 of the Complaint that are inconsistent with the letter.

67. But that is simply incorrect—despite Aspen's brief mention, there is no other such policy covering Ms. George.

**ANSWER:** The allegations contained in Paragraph 67 of the Complaint are legal conclusions to which no response is required. To the extent a further response is required, Aspen denies the allegations of Paragraph 67.

68. Therefore, Aspen was obliged to defend Ms. George under the Commercial General Liability coverage part.

**ANSWER:** The allegations contained in Paragraph 68 of the Complaint are also legal conclusions to which no response is required. To the extent a further response is required, Aspen denies the allegations contained in Paragraph 68.

69. Aspen breached its duty to defend on July 2, 2021, when it refused to defend Ms. George and issued the Denial Letter.

**ANSWER:** The allegations contained in Paragraph 69 of the Complaint are also legal conclusions to which no response is required. To the extent a further response is required, Aspen denies the allegations contained in Paragraph 69.

70. That breach proximately caused Ms. George to suffer damages.

**ANSWER:** The allegations contained in Paragraph 70 of the Complaint are also legal conclusions to which no response is required. To the extent a further response is required, Aspen denies the allegations contained in Paragraph 70.

71. Because she did not have an Aspen-provided defense, Ms. George did not understand her responsibilities or obligations in the lawsuit.

**ANSWER:** Aspen is without knowledge or information sufficient to form a belief as to the truth of the allegation that Ms. George did not understand her responsibilities or obligations in the lawsuit, and denies that allegation on that basis. The remaining allegations contained in Paragraph 71 of the Complaint are legal conclusions to which no response is required. To the extent a further response is required, Aspen denies the remaining allegations contained in Paragraph 71.

72. Because she did not have an Aspen-provided defense, Ms. George failed to Answer and went into default.

**ANSWER:** Aspen is without knowledge or information sufficient to form a belief as to the truth of the allegations that Ms. George failed to Answer and went into default, and therefore, denies such allegations on that basis. The remaining allegations contained in Paragraph 72 of the Complaint are legal conclusions to which no response is required. To the extent a further response is required, Aspen denies the remaining allegations contained in Paragraph 72.

73.     Because she did not have an Aspen-provided defense, Ms. George missed court deadlines and hearings.

**ANSWER:** Aspen is without knowledge or information sufficient to form a belief as to the truth of the allegations that Ms. George missed court deadlines and hearings, and therefore, denies such allegations on that basis. The remaining allegations contained in Paragraph 73 of the Complaint are legal conclusions to which no response is required. To the extent a further response is required, Aspen denies the remaining allegations contained in Paragraph 73.

74.     Because she did not have an Aspen-provided defense, Ms. George attended a deposition without any counsel to advise or represent her.

**ANSWER:** Aspen is without knowledge or information sufficient to form a belief as to the truth of the allegations that Ms. George attended a deposition without any counsel to advise or represent her, and therefore, denies such allegations on that basis. The remaining allegations contained in Paragraph 74 of the Complaint are legal conclusions to which no response is required. To the extent a further response is required, Aspen denies the remaining allegations contained in Paragraph 74.

75.     Because she did not have an Aspen-provided defense, Ms. George was unable to obtain discovery to defend herself in the lawsuit.

**ANSWER:** Aspen is without knowledge or information sufficient to form a belief as to the truth of the allegation that Ms. George was unable to obtain discovery

to defend herself in the lawsuit, and therefore, denies such allegation on that basis. The remaining allegations contained in Paragraph 75 of the Complaint are legal conclusions to which no response is required. To the extent a further response is required, Aspen denies the remaining allegations contained in Paragraph 75.

76. Because she did not have an Aspen-provided defense, Ms. George did not appear in the trial on damages.

**ANSWER:** Aspen is without knowledge or information sufficient to form a belief as to the truth of the allegation that Ms. George did not appear in the trial on damages, and therefore, Aspen denies such allegation on that basis. The remaining allegations contained in Paragraph 76 of the Complaint are legal conclusions to which no response is required. To the extent a further response is required, Aspen denies the remaining allegations contained in Paragraph 76.

77. Because she did not have an Aspen-provided defense, Ms. George was unable to contest the amount of damages awarded against her.

**ANSWER:** Aspen is without knowledge or information sufficient to form a belief as to the truth of the allegation that Ms. George was unable to contest the amount of damages awarded against her, and therefore, denies such allegation on that basis. The remaining allegations contained in Paragraph 77 of the Complaint are legal conclusions to which no response is required. To the extent a further

response is required, Aspen denies the remaining allegations contained in Paragraph 77.

78. Because Ms. George did not have an Aspen-provided defense, the jury awarded $24.5 million against her.

**ANSWER:** The allegations in Paragraph 78 of the Complaint purport to characterize the verdict form in the Dekalb County state court litigation. The verdict form is a written document, containing handwriting, that speaks for itself, and Aspen denies any characterization or summary of the verdict form that is inconsistent with the verdict form. The remaining allegations contained in Paragraph 78 of the Complaint are legal conclusions to which no response is required. To the extent a further response is required, Aspen denies the remaining allegations contained in Paragraph 78.

**Count II: Bad Faith Under O.C.G.A. § 13-6-11**

79. The Trustee incorporates Count I's paragraphs 52 through 78.

**ANSWER:** Aspen incorporates by reference its responses to Paragraphs 52 through 78 as if copied verbatim herein.

80. When it breached its duty to defend, Aspen acted in bad faith by issuing a blanket denial that was hasty, premature, and legally defective, by failing to reasonably investigate and provide a defense to Ms. George, and by abandoning Ms.

George instead of providing any defense under reservation as Georgia law plainly dictates under these circumstances.

**ANSWER:** The allegations contained in Paragraph 80 of the Complaint are legal conclusions to which no response is required. To the extent a further response is required, Aspen denies the allegations contained in Paragraph 80.

**Count III: Breach of the Duty to Indemnify**

81. The Trustee incorporates the factual allegations in paragraphs 1 to 51.

**ANSWER:** Aspen incorporates by reference its responses to Paragraphs 1 through 51 as if copied verbatim herein.

82. Under the Policy's Commercial General Liability coverage part, Aspen agreed to "pay those sums that the insured becomes legally obligated to pay as damages because of bodily injury or property damage to which this insurance applies." Ex. B, Policy, at ASIC00067.

**ANSWER:** Aspen admits that Paragraph 82 of the Complaint contains a partial, out of context quote from the Professional Liability coverage part Section I.1.a of Aspen Policy No. LRAFVTX20A0M, to the extent that it accurately quotes the policy language, which is subject to Aspen Policy No. LRAFVTX20A0M's complete terms, definitions, conditions, exclusions, limitations, endorsements, and other clauses. Aspen Policy No. LRAFVTX20A0M is a written document that speaks for itself, and Aspen denies any characterization or summary of Aspen

38

Policy No. LRAFVTX20A0M or any allegations contained within Paragraph 82 of the Complaint that are inconsistent with Aspen Policy No. LRAFVTX20A0M.

83. When the April 18, 2023 Judgment was entered, Ms. George became "legally obligated to pay... damages because of bodily injury... to which [the Policy] applies." *Id.* (emphasis omitted).

**ANSWER:** The allegations contained in this Paragraph are legal conclusions to which no response is required. To the extent a further response is required, Aspen denies the allegations contained in Paragraph 83.

84. In its Denial Letter, Aspen cited two reasons why it believed there in fact was no coverage under the Commercial General Liability coverage part, but each reason is wrong.

**ANSWER:** The allegations contained in Paragraph 84 that "each reason is wrong" are legal conclusions to which no response is required. To the extent a further response is required, Aspen denies those allegations. The remaining allegations in this Paragraph purport to characterize the language of the July 2, 2021 letter. Aspen's July 2, 2021 letter is a written document that speaks for itself, and Aspen denies any characterization or summary of the letter or any allegations contained within Paragraph 84 of the Complaint that are inconsistent with the letter.

85. Aspen first contended that the allegations were excluded by the exclusion 2.x, which excluded claims "arising out of the rendering of or failure to

39

render professional services, or that is covered under the Professional Liability Coverage Part of this policy or any other services performed for others that require specialized knowledge, labor; or skill and licensure by a governmental entity." Ex. D, Denial Letter, at ASIC00048 n.1.

**ANSWER:** The allegations contained in Paragraph 85 purport to characterize and restate the language of the July 2, 2021 letter. The July 2, 2021 letter is a written document that speaks for itself, and Aspen denies any characterization or summary of the letter or any allegations contained within Paragraph 85 of the Complaint that are inconsistent with the letter.

86. But Aspen elsewhere concluded that the service was *not* covered by the Professional Liability Coverage. And Ms. George later testified that the services she provided did not in fact require a license.

**ANSWER:** The allegations in the first sentence of this Paragraph purport to characterize the language of the July 2, 2021 letter. The July 2, 2021 letter is a written document that speaks for itself, and Aspen denies any characterization or summary of the letter or any allegations contained within Paragraph 86 of the Complaint that are inconsistent with the letter. As to the second sentence of Paragraph 86, Aspen is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 86 and, on that basis, denies them.

87. Aspen next contended that the allegations were excluded from by the exclusion excludes "any loss, cost or expense covered under a directors and officers, errors and omissions, employers' practices liability, workers' compensation, automobile, or fire insurance policy, or insurable under such a policy." *Id.*

**ANSWER:** The allegations in this Paragraph purport to restate the language of the July 2, 2021 letter. The July 2, 2021 letter is a written document that speaks for itself, and Aspen denies any characterization or summary of the letter or any allegations contained within Paragraph 87 of the Complaint that are inconsistent with the letter.

88. But, as outlined above, no other such policy covered Ms. George.

**ANSWER:** The allegations in Paragraph 88 are legal conclusions to which no response is required. To the extent a further response is required, Aspen is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 88 of the Complaint and, on that basis, denies them.

89. Accordingly, no coverage exclusion applies, and Aspen is obligated to pay the limits outlined in the Policy.

**ANSWER:** The allegations in Paragraph 89 are legal conclusions to which no response is required. To the extent a further response is required, Aspen denies the allegations contained in Paragraph 89.

**Count IV: Bad Faith Under O.C.G.A. § 33-4-6**

90. The Trustee incorporates Count III's paragraphs 81 to 89.

**ANSWER:** Aspen incorporates by reference its responses to Paragraphs 81 through 89 as if copied verbatim herein.

91. The Trustee made a formal written demand under O.C.G.A. § 33-4-6 for payment of the Underlying Judgment within sixty (60) days.

**ANSWER:** The allegations in Paragraph 91 are legal conclusions to which no response is required. To the extent a further response is required, Aspen admits that on October 30, 2025, counsel for the Trustee, Bondurant, sent Aspen a letter. Aspen denies that the October 30, 2025 letter satisfies the requirements of O.C.G.A. § 33-4-6.

92. More than 60 days elapsed without Aspen making the required payment.

**ANSWER:** The allegations in Paragraph 92 are legal conclusions to which no response is required. To the extent a further response is required, Aspen denies the allegations contained in Paragraph 92.

93. Aspen's refusal to make the required payment was done in bad faith.

**ANSWER:** The allegations in Paragraph 93 are legal conclusions to which no response is required. To the extent a further response is required, Aspen denies the allegations in Paragraph 93.

**Prayer for Relief**

The Trustee demands a trial by jury on all issues and requests that the Court enter judgment against Aspen as follows:

On **Count I**, for all damages that the jury determines flowed from Aspen's breach of the duty to defend, including costs of defense, fees, and consequential damages, any and all of the damages in the Underlying Judgment and any and all accrued interest on that judgment;

on **Count II**, for an award of the expenses of litigation and attorneys' fees;

on **Count III**, for the full $2 million limit as well as any other amounts as are due under the Policy, plus post-judgment interest and costs;

on **Count IV**, for an additional 50 percent of the liability of the insurer for the loss, as well as all reasonable attorney's fees; and

for any and all other relief provided by law or for such other relief as the Court deems just and proper.

## <u>AS TO "PRAYER FOR RELIEF"</u>

Aspen denies that Plaintiff is entitled to any of the relief demanded in the Prayer for Relief, and Aspen further avers that the damages and other relief sought in this action are not recoverable, and the Trustee has not set forth any recoverable causes of action.

## ASPEN'S AFFIRMATIVE AND OTHER DEFENSES

By way of further answer, Aspen asserts the defenses below. By setting forth the following defenses, Aspen does not assume the burden of proving any fact, issue, or element of a cause of action where such burden properly belongs to Plaintiff. Aspen reserves the right to assert other defenses not listed.

Plaintiff states that Aspen Policy No. LRAFVTX20A0M (the "Aspen 20-21 Policy") was in effect at the time of the loss in October 2020. *See* Complaint, ECF No. 1 at 4 n.1. Thus, Aspen's Answer and Affirmative Defenses respond to the insurance policy asserted in Plaintiff's Complaint, the Aspen 20-21 Policy.

1. Plaintiff has failed to state a claim upon which relief may be granted against Aspen.

2. Plaintiff's claims against Aspen are barred or limited, in whole or in part, by the terms, definitions, conditions, exclusions, limitations, and other clauses of Ms. George's Certificate of Liability Insurance and the Aspen 20-21 Policy. Aspen expressly and affirmatively pleads all insuring agreements, terms, definitions, conditions, exclusions, limitations, and other clauses of the Aspen 20-21 Policy, which speak for themselves. Plaintiff is not entitled to any relief that enlarges, varies, modifies, or contradicts the Aspen 20-21 Policy.

3. Plaintiff asserts claims on behalf of the Insured and therefore stands in the shoes of the Insured. Thus, Plaintiff's claims are subject to the requirements of

44

Ms. George's Certificate of Liability Insurance and the Aspen 20-21 Policy as well as any and all defenses, setoffs, and other rights and defenses that Aspen could assert against the Insured.

4. Plaintiff's claims are barred because the Insured or Plaintiff has failed to satisfy the obligations, covenants, and conditions precedent and subsequent required under the Aspen 20-21 Policy.

5. Plaintiff's claims are barred due to the Insured's and/or Plaintiff's failure to cooperate as required under the Aspen 20-21 Policy, including, but not limited to, pursuant to the *Insured*'s Duties Upon Receipt of a Lawsuit, Notice of *Claim*, or Written Demand from a *Client* of the Professional Liability coverage part (Section V.1.D) and the Duties In The Event of Occurrence, Offense, Claim or Suit of the Commercial General Liability coverage part (Section III.2) in the Aspen 20-21 Policy.

6. Plaintiff's claims are barred to the extent that the Insured's breached the Representations/Warranties; Sole Agreement section of the Professional Liability coverage part (Section VI.K) or the Representations provisions of the Commercial General Liability coverage part (Section III.5) in the Aspen 20-21 Policy.

7. Plaintiff's claims are barred pursuant to the doctrines of waiver and estoppel.

8. Plaintiff's claims are barred to the extent the Aspen 20-21 Policy is void.

9. Plaintiff's claims are barred because the Insured refused to provide any information or respond substantively to Aspen in any way despite Aspen's numerous requests for information regarding Ms. Enahoro's claim.

10. Plaintiff's claims are barred, in part, because there is no coverage under the Aspen 20-21 Policy for any damages that are not insurable under applicable law, including, but not limited to, any damages attributable to intentional misconduct or punitive or exemplary damages.

11. Plaintiff's claims are barred, in part, by the definitions of "damages" in the Professional Liability coverage part (Section V.D) and Commercial General Liability coverage part (Section IV.6) in the Aspen 20-21 Policy, precluding coverage for punitive or exemplary, treble, additional or multiple damages, or any other form of fines or penalties which may be assessed against an insured over and above compensatory damages.

12. Plaintiff's claims are barred, in whole or in part, to the extent anyone altered or manipulated the characterization of the damages and other relief in Ms. Enahoro's lawsuit.

13. Plaintiff's claims are barred by the Covered by Other Coverage Exclusion in the Commercial General Liability coverage part (Section I.A.2.s) in the

Aspen 20-21 Policy. Plaintiff's claims are barred by the Covered by Other Coverage Exclusion in the Commercial General Liability coverage part (Section I.A.2.s) in the Aspen 20-21 Policy regardless of whether Ms. George had another insurance policy.

14.     Plaintiff's claims are barred by the Professional Services Exclusion in the Commercial General Liability coverage part (Section I.A.2.x) in the Aspen 20-21 Policy.

15.     Plaintiff's claims under the Commercial General Liability coverage part of the Aspen 20-21 Policy are barred because the Underlying Claim did not satisfy the Coverage Agreement for Coverage A and there was no "occurrence," as required by the Aspen Policy (Sections I.A.1 and IV.16).

16.     Plaintiff's claims are barred by the Expected or Intended Injury exclusion in the Commercial General Liability coverage part (Section I.A.2.a) of the Aspen 20-21 Policy.

17.     Plaintiff's claims are barred by the Intentional or Unauthorized Conduct exclusion in the Commercial General Liability coverage part (Section I.A.2.r) of the Aspen 20-21 Policy for bodily injury arising out of:

(4) any *claims* based upon the violation of any state or federal statutory or regulatory law . . .

(5) Any use, administration or prescription of any drug, biological product, medical device, implant or pharmaceutical which has not received final approval by the United States Food and Drug Administration (FDA) for treatment of human beings unless used in an

FDA approved study; or which such *insured* is not licensed to use, administer or prescribe.

18.     Plaintiff's claims are barred or limited to the extent the Perfect 10 Beauty & MedSpa LLC is not an Insured under the Certificate of Liability Insurance or the Aspen 20-21 Policy because, pursuant to Section IV.15 of the Commercial General Liability coverage part:

> '*Named Insured*' means the members and student Members of Lead Named Insured as listed in the Schedule of Insureds on record with the underwriters for Aspen Specialty Insurance Company and to whom a Certificate of Insurance was issued. When a *named insured* is an individual and the sole proprietary member of a professional association or professional limited liability company, then the association or company shall be included within the coverage afforded an *insured* as though such association or company were one and the same as an *insured*; however, only one 'each *claim*' limit of liability and one 'all *claims*' limit of liability shall be applicable to cover both the individual *insured* and the association or company, and there shall not be two policy limits or separate policy limits for the individual *insured* and the association or company.

19.     Plaintiff's claims are barred because the Underlying Claim did not satisfy the Coverage Agreement, Section I.A, or the definition of "professional services," Section V.M, of the Professional Liability coverage part of the Aspen 20-21 Policy.

20.     Plaintiff's claims are barred by the Aspen 20-21 Policy Professional Liability coverage part exclusion, Section II.L, barring coverage "for any *claim* arising out of, in whole or in part:"

*Professional services* rendered when any applicable license of the person rendering such professional services has been suspended, revoked or surrendered, or which constitute a violation of any restriction imposed upon any such license.

21. Plaintiff's claims are barred by the Aspen 20-21 Policy Professional Liability coverage part exclusion, Section II.R, barring coverage "for any *claim* arising out of, in whole or in part:"

Any type of health or wellness care not falling within the definition of *professional services* under the Professional Liability coverage part, including but not limited to, any act listed in the subparagraphs below, committed by any *insured*, even when intertwined with, or inseparable from, an *insured incident*: . .

3. medical care; . . .

7. failure to diagnose or treat any condition, or failure to refer any person to a healthcare provider for *professional services*;

8. the administering or prescription of any prescribed medicine; . . .

10. *professional services* using lasers; . . .

22. Plaintiff's claims are barred by the Aspen 20-21 Policy Professional Liability coverage part exclusion, Section II.E, barring coverage "for any *claim* arising out of, in whole or in part" . . . "any actual or alleged violation of any state or federal statute or regulatory law . . . ."

23. Plaintiff's claims are barred or limited to the extent the Perfect 10 Beauty & MedSpa LLC is not an Insured under the Certificate of Liability Insurance or the Aspen 20-21 Policy because, pursuant to Section V.G.2 of the Professional Liability coverage part:

49

When an *insured* is an individual and the sole *proprietary member* of a professional association or professional limited liability company, then the association or company shall be included within the coverage afforded an *insured* as though such association or company were one and the same as an *insured*; however, only one "each *claim*" limit of liability and one "all *claims*" limit of liability shall be applicable to cover both the individual *insured* and the association or company, and there shall not be two policy limits or separate policy limits for the individual *insured* and the association or company.

24.     Aspen has no liability for breach of the duty to defend or duty to indemnify because there was no coverage under the Aspen 20-21 Policy.

25.     Any recovery for breach of the Aspen 20-21 Policy is limited to $2 million.  The Professional Liability coverage part and Commercial General Liability coverage part limits of liability of $2 million for each claim or occurrence are combined and do not apply separately.

26.     Recovery of consequential damages is barred or limited, in whole or in part, because the alleged damages, attorney's fees, interest, and other requested relief cannot be traced solely to the alleged breach of contract.

27.     Aspen has no liability for bad faith because there is no coverage under the Aspen 20-21 Policy.

28.     At all relevant times, Aspen acted reasonably and in good faith in handling and determining the underlying claim at issue.

29.     Aspen engaged in no conduct sufficient to support an award of punitive damages.

30. Plaintiff's claims are barred, in whole or in part, to the extent that Ms. George made misrepresentations on her application for coverage or otherwise made misrepresentations to Aspen.

31. Plaintiff cannot recover attorneys' fees and expenses of litigation under multiple causes of action, including, but not limited to, under both O.C.G.A. § 13-6-11 and O.C.G.A. § 33-4-6.

32. Plaintiff cannot recover attorneys' fees and expenses of litigation under O.C.G.A. § 13-6-11 or any other cause of action, because O.C.G.A. § 33-4-6 provides the exclusive avenue, if any, for recovering attorneys' fees and expenses of litigation in an action involving an alleged breach of an insurance contract.

33. To the extent the Court deems O.C.G.A. § 13-6-11 applicable, Plaintiff cannot recover attorneys' fees and expenses of litigation under O.C.G.A. § 13-6-11 because Aspen had no interested or sinister motive.

34. In response to the October 30, 2025 letter from the Trustee, Aspen acted in good faith by asking the Trustee for the relevant information. To the extent that the Trustee withheld such information in order to try to manufacture circumstances for an inflated recovery, Plaintiff's claims are barred. To this day, the Trustee still has not responded to Aspen's request for information. Yet facts and allegations in the Trustee's Complaint contradict or are inconsistent with those stated in the

Trustee's October 30, 2025 letter. Accordingly, Plaintiff's claims for bad faith are barred.

35. Plaintiff's claims are barred to the extent that, prior to Aspen's coverage position, Ms. Enahoro or Ms. Enahoro's counsel, who is now one of the Special Counsel to the Trustee for this matter, withheld information from Aspen intentionally and/or in attempts to create a set up for inflated recovery.

36. Plaintiff's bad faith claims are barred because Aspen is not the proximate cause of the judgment in favor of Ms. Enahoro and against the Insured.

37. Plaintiff's recovery is barred to the extent that the Insured failed to mitigate her damages.

38. Plaintiff's claims are barred by the doctrine of unclean hands.

39. Plaintiff's claims are barred, in whole or in part, by the doctrine of *in pari delicto* to the extent the alleged damages were caused by the wrongful acts, misconduct, or fraud of the Insured, which are imputed to the Plaintiff, who stands in the Insured's shoes.

40. Plaintiff's claims are barred, in whole or in part, to the extent that the Insured, Plaintiff, or creditors of the Insured engaged in bad faith, inequitable conduct, or conduct in violation of the Bankruptcy Code or other applicable law in connection with the handling of the underlying claims or the filing of or matters alleged in the Complaint.

41.     Bad faith claims are unassignable by law.  Additionally, Plaintiff's claims are barred to the extent the bad faith claims are otherwise unassignable by Ms. George by law.

42.     Plaintiff's claims are barred to the extent the claims asserted are not property of the Insured's bankruptcy estate pursuant to Section 541 of the Bankruptcy Code or are otherwise not properly asserted by Plaintiff, and therefore may not be pursued by Plaintiff in his capacity as Chapter 7 trustee.

43.     Aspen reserves the right to rely upon additional facts and defenses based on further disclosures, investigation, and discovery.  Aspen reserves the right to raise any other defense that cannot now be reasonably determined or which may become available during future proceedings in this action.

[*Signatures on the following page*]

Dated:  March 16, 2026

Respectfully submitted,

*/s/*_____

Shari L. Klevens
GA Bar No. 663977
Sarah E. Trevino
GA Bar No. 660094
**Dentons US LLP**
303 Peachtree Street, NE
Suite 5300
Atlanta, GA 30308
Telephone: (404) 527-4000
Facsimile: (404) 527-4198
shari.klevens@dentons.com
sarah.trevino@dentons.com

Christina M. Carroll
(pro hac vice application forthcoming)
**Dentons US LLP**
1900 K Street NW
Washington, DC 20006
Telephone: (202) 496-7212
Facsimile: (202) 496-7756
christina.carroll@dentons.com

*Attorneys for Aspen Specialty Insurance Company*

# **FONT CERTIFICATION**

Pursuant to Local Rule 7.1(D), I hereby certify that the foregoing document was prepared using Time New Roman 14 point type as provided in Local Rule 5.1.

Dated:  March 16, 2026

Respectfully submitted,

*/s/*_____
Shari L. Klevens

# CERTIFICATE OF SERVICE

I hereby certify that on March 16, 2026, the undersigned electronically filed the foregoing using the CM/ECF system, which will automatically send an email notification of such filing to all counsel of record.

*/s/*_____
Shari L. Klevens