**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

JAMES G. BAKER, as Chapter 7
Trustee for the Bankruptcy Estate of
Connie Kimberly George,

     *Plaintiff*,

v.

ASPEN SPECIALTY
INSURANCE COMPANY,

     *Defendant*.

CIVIL ACTION FILE
NO. No. 1:26-CV-00163-JPB

Jury Trial
Demanded

**ESI PROTOCOL**

Plaintiff James G. Baker, as Chapter 7 Trustee for the Bankruptcy Estate of

Connie George, and Defendant Aspen Specialty Insurance Company ("Aspen")

(collectively, the "Parties") stipulate to the following ESI Protocol ("Protocol")

regarding the production format for Electronically Stored Information ("ESI") and

documents:

**I.     Limitation on Scope**

Nothing in this Protocol alters either Party's rights, obligations, and

responsibilities under the Federal Rules of Civil Procedure.  Neither the participation

in this ESI Protocol nor the production of documents and ESI during discovery in

this Action means that any Party concedes that the documents or ESI are relevant

1

and admissible at trial.  By participating in this ESI Protocol, no party waives any rights to challenge the relevance and admissibility of documents and ESI based on the Federal Rules of Evidence. The Parties have not yet entered into any agreements regarding sources and scope of production of ESI other than as described in Paragraph 13 of the Joint Preliminary Report and Discovery Plan (regarding the Parties' agreement not to log certain documents post-dating the filing of the Complaint).  This Protocol is merely intended to simplify and streamline the process for production of documents and ESI by setting forth the format for production.

Producing parties are not required to produce documents or ESI until a protective order is entered in this matter which includes protections regarding confidentiality and against the waiver of privilege pursuant to Federal Rule of Evidence 502(d).

## II.    Cooperation and Proportionality

The Parties agree to take the proportionality considerations addressed in the Federal Rules of Civil Procedure into account for purposes of preservation and production of documents and ESI in this Action. This Protocol is not intended to expand the Parties' obligations under Federal Rules of Civil Procedure.

Each Producing Party shall design and implement the methods it uses to identify, cull, and review its potentially responsive ESI based on its knowledge and understanding of its own data, the facts and issues involved in the action, and the

Requesting Party's discovery requests. A Producing Party may apply search terms to appropriate sources and may also conduct a targeted collection of sources likely to contain responsive materials.

The Parties agree to meet and confer regarding any disagreements that arise as a result of the implementation of this Protocol.

## III.    Definitions

In this Protocol, the following terms have the following meanings:

a.    This "Action" means this legal action styled *Baker v. Aspen Specialty Insurance Company*, No. 1:26-CV-00163-JPB, pending in the United States District Court for the Northern District of Georgia, Atlanta Division.

b.    "Attachments" means files or data that are physically or logically associated and should be identified by mapping to their parent by the Document or Production number.  If attachments are combined with their parent documents, then "BeginAttach" and "EndAttach" fields listing the unique beginning and end number for each attachment must be included.

c.    "Bates number" means the page-level unique alpha-numeric identifier(s) associated with every document produced, including physical sheets of paper, electronically stored TIFF images, or other tangible thing, consisting of (1) an alphabetic portion identifying the Producing Party; and (2) a numeric portion incremented according to a scheme defined at the Producing Party's discretion to

ensure that the alphanumeric identifier for each page of physical sheets of paper, electronically stored TIFF images, or other tangible thing is unique. Document-level Bates numbers may be appropriate in limited circumstances such as the production of Native files, *see* Paragraph IV(E).

d.    "Document" means "documents" as used in the Federal Rules of Civil Procedure 26 and 34, including hard copy and electronically stored information.

e.    "Duplicates" means exact duplicate ESI documents (based on MD5 or SHA-1 hash values) resident within a Party's data set. Only documents where the main document and the attachments are exactly the same will be considered exact duplicates. ESI with differing file names but identical hash values shall not be considered duplicates. Exact duplicate shall mean bit-for-bit identicality with both document content and any associated metadata. Where any such documents have attachments, hash values must be identical for both the document-plus-attachment (including associated metadata) as well as for any attachment (including associated metadata) standing alone.

f.    "Electronically stored information" or "ESI" means and refers to information or data, as defined in the Federal Rules of Civil Procedure, including Rule 34(a).

g.    "Extracted Text" means the text extracted from a document, and includes all header, footer, and document body information when available.

h.      A "load file" means the file necessary to load data into a litigation review database.  A load file can, for example, specify what individual pages belong together as a document, what attachments are included with a document, where a document begins and ends, and what metadata is associated with a document.

i.      "Metadata" means the metadata fields specified in Paragraph IV(F) below.

j.      "Native File(s)" means ESI in the electronic format of the application in which such ESI is normally created, viewed, and/or modified such as a spreadsheet in MS Excel format.

k.      "OCR Text" means searchable text from a document generated by means of optical character recognition performed using appropriate software.

l.      "Producing Party" means or refers to a Party in the above-captioned matter from which production of ESI is sought.

m.      "Requesting Party" means or refers to a Party in the above-captioned matter seeking production of ESI.

## IV.    Production Format

### A.    Document Image Format.

With the exception of ESI discussed in Paragraph IV(C) below, or unless otherwise agreed to in writing, ESI shall be produced electronically in single-page TIFF format.

Documents will be produced in black and white at 300 DPI or Compressed .JPG format.  The Producing Party will honor reasonable requests for a color image, produced in 300 DPI, if color is necessary to understand the meaning or content of a document.

### B.    OCR and Extracted Text Files.

For each document produced in TIFF format, a document level text file shall be provided, along with the image files and metadata discussed in Paragraph IV(F) below.  Extracted full text shall be provided for ESI, and OCR text shall be provided for scanned paper. OCR generated text should only be used for ESI if extracted text is not available or if the document has been redacted. The text file name shall be the same as the Bates number of the first page of the document.

### C.    Native Files.

The Parties acknowledge that production in TIFF format may occasionally not be ideal for certain types of ESI (*e.g.*, Microsoft Excel files). If a Party believes that it needs a Native file version in addition to the produced TIFF(s) and the Native file version has not already been produced, it can request the Native File from the Producing Party by identifying the bates number of each and every document for which a Native file version is sought.  The Producing Party will honor reasonable requests for a Native File.

Any Native files that are produced shall be produced with the metadata fields

set forth in Paragraph IV(F), to the extent the metadata fields exist for the particular ESI type and are reasonably available.  A slip sheet will be produced in TIFF format to facilitate Bates and confidentiality stamping.  Extracted text will also be provided for those files produced in Native file format unless they require redaction.  If documents to be produced in Native file format require redaction, the Parties will meet and confer regarding how to implement redactions.  Other documents or ESI requiring redactions will be produced in TIFF images.

###### D.     Duplicates.

The parties shall endeavor to use the following procedure for handling duplicates. However, no Party shall be subject to any motion, liability, or cost award for failure to deduplicate.

Removal of duplicate documents will occur on the global level across custodial and non-custodial data sources and will only be done on exact duplicate documents (based on MD5 or SHA-1 hash values, at the family level). For exact duplicate documents, the Producing Party will produce a single copy of the responsive document ("Single Production Copy"), as well as the metadata described in Paragraph IV(F) herein for the Single Production Copy.  ESI duplicates should attempt to be removed from all ESI productions in a manner that does not break up document families – in other words, emails should be treated as duplicates only if they are identical both in their bodies and in all their attachments, and an email

attachment should not be treated as a duplicate merely because an identical copy of the document exists as a separate file. If removing duplicates, the Producing Party should populate a field of data that identifies all Custodian(s) from whom the produced document was collected.

### E.    Bates Numbering and Other Unique Identifiers.

Each page of a produced document shall have a Bates number electronically branded onto the TIFF image in such a manner that information from the source document is not concealed.  There shall be no other legend or stamp placed on the TIFF image unless (1) a document qualifies for confidential treatment pursuant to the terms of a Consent Confidentiality Protective Order entered by this Court in this Action, or (2) if the TIFF image requires redaction.  A Party producing ESI in a Native file format shall also produce a slip sheet in TIFF format with a bates number for purposes of identification of the associated Native file.

### F.    Metadata.

The Parties agree to produce a load file compatible with a standard document management product that will include the following list of metadata fields (to the extent applicable to the particular ESI and reasonably available) to accompany each produced ESI file.  The following list identifies the metadata fields that will be produced (to the extent applicable and reasonably available):

a. Document number or Production number (including the document start

and document end numbers). This should use the standard Bates number in accordance with those used in previous productions.

b. BeginAttach
c. EndAttach
d. Title/Subject
e. Sent/Date and Time (for emails only)
f. Last Modified Date and Time Created Date and Time (for E-docs)
g. Received Date and Time (for emails only)
h. Author
i. Recipients
j. cc:
k. bcc:
l. Source (custodian)
m. Production Parent ID
n. Production Attachment ID
o. Hash Value
p. File Path
q. Page Count
r. Attachment Count
s. Attachment Names
t. Original File Name
u. Doc extension
v. Document Type
w. Full Text
x. Accessed Date & Time
y. Last Print Date
z. Production Has Redactions

## G.    **Attachments.**

Documents with attachments will be produced as full families. Each attachment shall be mapped to its parent by the Document or Production number. If an attachment is combined with its parent document, then "BeginAttach" and "EndAttach" fields listing the unique beginning and end number for each attachment must be included. If select document(s) in a family are withheld as Privileged, the

9

Producing Party should produce a slip sheet that states "Withheld as Privileged" in the place of the withheld member(s) of the family.

## V.    Clawback

The Parties' agreements relating to inadvertent disclosure of documents protected by the attorney-client, work product, or any other privilege are addressed in the Consent Confidentiality Protective Order.

## VI.    Apportionment of Costs

In agreeing to this Protocol, no Party waives or relinquishes any right or interest it may have under Federal Rule of Civil Procedure 26(b)(2)(B) to seek (1) cost shifting or apportionment for the costs of electronic discovery in instances where the materials sought are not reasonably available and/or their production would involve extraordinary effort or resources, (2) to seek costs as sanction in a discovery or other motion; or (3) costs of suit as a prevailing party at the conclusion of this Action.

[*Signatures appear on the following page.*]

**Dated**:  June 1, 2026

 **STIPULATED AND AGREED TO BY:**

/s/ *Benjamin W. Thorpe*
Benjamin W. Thorpe
Naveen Ramachandrappa
Matthew R. Sellers
Edwin A. Page
Kayla P. Gannon
**Bondurant, Mixson & Elmore, LL**
1201 W Peachtree St NW, Suite 3900
Atlanta, Georgia 30309
Tel: (404) 881-4100
thorpe@bmelaw.com
ramachandrappa@bmelaw.com
sellers@bmelaw.com
page@bmelaw.com
polonsky@bmelaw.com

*Attorneys for Plaintiff James G. Baker, as Chapter 7 Trustee for the Bankruptcy Estate of Connie Kimberly George*

/s/ *Shari L. Klevens*
Shari L. Klevens
**Dentons US LLP**
303 Peachtree Rd NE, Suite 5300
Atlanta, Georgia 30308
Tel: (404) 527-4000
shari.klevens@dentons.com

Christina M. Carroll
(admitted *pro hac vice*)
**Dentons US LLP**
1900 K Street NW
Washington, DC 20006
Tel: (202) 496-7212
christina.carroll@dentons.com

*Attorneys for Defendant Aspen Specialty Insurance Company*